UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY G. GILL,

                Plaintiff,

                                              **Hon. Hugh B. Scott**

                v.

                                              03CV98

                                              (CONSENT)

ERICKSON,
MATTHEW PORTER,                                 **Amended Order**

                Defendants.
_____

        Before the Court is remaining defendant Matthew Porter's motion for summary judgment dismissing claims against him and hence this case (Docket No. 71[1]). The parties consented to proceed before the undersigned as Magistrate Judge on August 19, 2003 (Docket No. 16). The Court issued a briefing schedule for this motion, in which responses were due by November 3, 2006, and any reply was due by November 13, 2006, with the motion deemed submitted (without oral argument) as of the latter date (Docket No. 78). Plaintiff requested (Docket No. 79), and was granted (Docket No. 80), an extension of this briefing schedule; response now were due by December 15, 2006, with any reply due by December 22, 2006, and the motion was deemed submitted on December 22, 2006 (Docket No. 80). The Court issued an Order granting the

---

[1] In support of this motion, defendant Porter submits his declaration, Docket No. 75; the declaration of his attorney, Docket No. 73 (with exhibits); the declarations of Monica DeSourdy, Docket No. 72 (with exhibit), and John Peters, Docket No. 74; his Statement of Undisputed Facts, Docket No. 76; and his Memorandum of Law, Docket No. 77.
        In opposition, plaintiff submits his affirmation and local civil rule 7.1(e) statement, Docket No. 81; and his Memorandum of Law, Docket No. 82.

remaining defendant Matthew Porter summary judgment, Gill v. Erickson, No. 03CV98, 2007 U.S. Dist. LEXIS 3609 (W.D.N.Y. Jan. 18, 2007) (Docket 83, Jan. 18, 2007), and entered Judgment closing this case (Docket No. 84).  Plaintiff filed a Notice of Appeal (Docket No. 85).  Later, an error was found in the Order granting Porter summary judgment and this Amended Order was entered to replace that Order.  The correction will be indicated by a footnote (see at 14 n. 2, infra).

## BACKGROUND

*Complaint and Procedural History of Claims Against Defendant "Porter"*

Plaintiff commenced this civil rights action (in the United States District Court for the Northern District of New York) against various prison officers and officials (including a defendant "W. Porter") for his treatment while in Elmira Correctional Facility ("Elmira").  Plaintiff moved to proceed as a poor person (Docket No. 2) and the case was transferred to this Court (Docket No. 4, see Docket No. 5, N.D.N.Y. docket sheet).  On May 6, 2003, this Court granted in part plaintiff's motion, granting him leave to proceed but only for his administratively exhausted claims as against certain defendants and initially dismissing claims against defendant "W. Porter" (Docket No. 8; see also Docket No. 6).  Plaintiff moved for reconsideration of dismissal of claims against defendant W. Porter due to an error in identifying that party in the Order (Docket No. 9).  After consenting to proceed before the undersigned (Docket No. 16), on December 15, 2003, this Court granted plaintiff's motion to reconsider dismissal of claims against defendant "W. Porter," reinstating or restoring that defendant as a party in this action, and ordering the United States Marshal to serve copies of the Summons and Complaint upon defendant "W. Porter."  (Docket No. 22.)

At a status conference on February 26, 2004, plaintiff reported that defendant "W. Porter" was not served. Defense counsel for the other New York State employee defendants stated that he would attempt to locate defendant "W. Porter" if he was still an employee of the New York State Department of Correctional Services ("DOCS"). (Docket No. 24.) The Summons for defendant W. Porter was returned on March 12, 2004, unexecuted with a Marshal's notation of "Def. is unknown @ Elmira, C.F." (Docket No. 25.) Plaintiff moved for entry of a default judgment against defendant "W. Porter" (Docket No. 27), which was denied (Docket No. 29). At a status conference on September 3, 2004, defendant "W. Porter" was identified as Matthew Porter (Docket No. 35) and it was ordered that Matthew Porter be served with the Complaint in this action (Docket No. 36; see also Docket No. 40 (summons returned as to Matthew Porter)). Defendant Matthew Porter (hereinafter "defendant Porter" or "defendant") answered on April 5, 2005 (Docket No. 41).

Meanwhile, other defendants moved for judgment on the pleadings (Docket No. 45), which was granted and terminated them as parties in this action (Docket No. 48). Plaintiff was given leave to move for reconsideration (Docket No. 52), which plaintiff ultimately declined to pursue (see Docket Nos. 57, 60). After some extensions of time to conduct plaintiff's deposition and complete discovery (Docket Nos. 63, 65, 66, 68), plaintiff was deposed (see Docket No. 73, Def. Atty. Decl. ¶ 3, Ex. A).

*Plaintiff's Factual Allegations*

Plaintiff's remaining claims against defendant Porter stem from plaintiff's move from C-block to G-block at Elmira. Plaintiff has various claimed maladies, including chronic lower back pain, carpel tunnel syndrome, and arthritis (Docket No. 1, Compl., Statement of Facts, ¶ 1) which

he contends limited his ability to move or lift. He claims that defendant forced plaintiff (despite his medical condition) to move his own property from C-block to G-block on March 22, 2002, and to move to a cell that required him to climb one flight of stairs ten times. He claims that he had a medical permit that required him only to stay on the "flats," which plaintiff construes to mean being only on the ground floor of the facility (id. ¶¶ 21-22; Docket No. 77, Def. Memo. of Law at 1, 2; see Docket No. 73, Def. Atty. Decl. Ex. B (medical order to have plaintiff "lock[ed] on the flats")). Plaintiff alleges that defendant Porter did not assist him in moving plaintiff's belongings from his old cell to his new cell, requiring him to make ten trips up and down the stairs (Docket No. 1, Compl. ¶ 22).

On March 28, 2002, plaintiff alleges that he was transferred again to the ground floor of G-block, but defendant Porter again refused to assist in moving plaintiff's belongings (id. ¶ 24). By not changing his initial cell assignment to one on the ground floor and by forcing plaintiff to carry his belongings in two moves, plaintiff claims that defendant acted with deliberate indifference to plaintiff's medical condition, violating his Eighth and Fourteenth Amendment rights and § 504 of the Rehabilitation Act (id. ¶¶ 23, 25, 29; Docket No. 77, Def. Memo. at 1).

*Defendant's Motion*

Defendant Porter is a corrections officer employed by DOCS and then assigned to Elmira (Docket No. 75, Porter Decl. ¶¶ 1-2). He sometimes filled in for the Hall Captain (or first officer or block officer) in Elmira's G-block (id. ¶ 3), and as a Hall Captain he was in charge of inmate movement in G-block but had no control over cell assignments (id. ¶¶ 6, 8-9) and defendant as a Hall Captain did not escort inmates to their cells (id. ¶ 6). The Movement and Control unit at Elmira made cell assignments for inmates, subject to medical restrictions authorized by the

4

facility's medical unit and approved by the Deputy Superintendent for Security (id. ¶ 10; Docket No. 74, Peters Decl. ¶¶ 5-10).  Defendant claims that, as Hall Captain, he had no authority to change a cell assignment and could not fail to place an inmate in the cell assigned by Movement and Control (Docket No. 74, Peters Decl. ¶¶ 21-22; Docket No. 75, Porter Decl. ¶ 4).  As Hall Captain, defendant had to remain at his desk and could not assist an inmate in moving his belongings (Docket No. 75, Porter Decl. ¶ 32; Docket No. 77, Def. Memo. at 12-13).  Inmates were responsible for moving their own property, absent a specific medical exception, and in that instance only specific "packup inmates" could assist an ailing inmate in moving his possessions (and the block plaintiff moved to did not have a "packup inmate" available) (Docket No. 75, Porter Decl. ¶¶ 33, 37-40; Docket No. 77, Def. Memo. at 12-13).  Other correction officers or inmates could not assist an inmate by moving his belongings (Docket No. 75, Porter Decl. ¶ 37).

Defendant contends that plaintiff did not have an order restricting his cell assignment to the ground floor, that he had an order to lock on the "flats," defined in Elmira as the ground or one floor up in specific galleries at that facility (Docket No. 74, Peters Decl. ¶¶ 14-16, 12-13; Docket No. 75, Porter Decl. ¶¶ 18-21; Docket No. 77, Def. Memo. at 6), galleries numbered 1, 2, 3, or 4 (Docket No. 74, Peters Decl. ¶¶ 11-14, 15).  An inmate would require a special medical order restricting him to ground floor housing (Docket No. 74, Peters Decl. ¶ 16; Docket No. 75, Porter Decl. ¶ 22).  Plaintiff alleges that he was ordered to cell G-4-26, a cell on 4 gallery (on the flats but one floor above the ground level) (Docket No. 75, Porter Decl. ¶¶ 26, 28-29; Docket No. 74, Peters Decl. ¶¶ 13-14; Docket No. 1, Compl. ¶ 21).

Plaintiff also claimed that the medical unit exempted him from climbing stairs by a written order (Docket No. 1, Compl., Ex. D; Docket No. 73, Def. Atty. Decl. Ex. B).  But

5

defendant contends that the written order from plaintiff's medical records (Docket No. 72, DeSourdy Decl. Ex. A) does not contain the restrictions plaintiff now claims (id. ¶¶ 8-15; Docket No. 77, Def. Memo. at 3, 8-11).  There are two areas that are altered from plaintiff's medical records version of the order, the blanks for "Lifting no more than ___ pounds" and the indication whether there was a restriction on climbing stairs (Docket No. 72, DeSourdy Decl. ¶¶ 8-11, 12-15, Ex. A).  In the medical records version of that order both lines are blank and the records custodian declares that there were no erasures or signs of alteration to the document in plaintiff's medical file (id.).  The exhibit to the Complaint (see Docket No. 1, Compl. Ex. D; Docket No. 73, Def. Atty. Decl. Ex. B) has checked restrictions for not lifting or for climbing stairs, with the number zero written in the line indicating the amount of weigh he can lift (id.), with the Complaint exhibit also containing a page from plaintiff's ambulatory health record from March 2002 also indicating medical restrictions (Docket No. 1, Compl., Ex. D).

In his motion for summary judgment, defendant Porter contends that individual defendants are not held liable under the Rehabilitation Act, thus plaintiff's claim under § 504 of that Act should be dismissed (Docket No. 77, Def. Memo. at 3-4).  He argues that plaintiff failed to establish a prima facie case of deliberate indifference (id. at 4-8).  As for plaintiff's climbing and lifting allegations, defendant points out that the order attached to the Complaint may have been forged to add notations restricting plaintiff's lifting and movement (id. at 10-12), and that plaintiff bears the burden of proof and that defendant needed only to show an absence of evidence to support plaintiff's claim to move for summary judgment (id. at 11-12). Alternatively, defendant argues that he is entitled to qualified immunity because, at the time, it

was reasonable for defendant to believe that he was not violating plaintiff's rights by ordering him to move without assistance (id. at 13-14).

Plaintiff argues that his medical record supports his version of the medical order and its restrictions on his climbing and lifting. The medical notes from Dr. Yin in March 2002 in both the ambulatory health record and the medical order indicate that plaintiff was not to have programs, that he was to avoid climbing stairs ("no stairs"), and he was to remain on the flats ("stay flats") (Docket No. 1, Compl, Ex. D; Docket No. 81, Pl. Rule 7.1(e) statement ¶ 7), and that prison officials were on notice of plaintiff's medical restriction before his March 22, 2002, relocation (Docket No. 81, Pl. Rule 7.1(e) statement ¶ 7; Docket No. 1, Compl. Ex. E). Plaintiff contends that Porter's declaration in support of his motion was self-serving and contradicts his earlier interrogatory answers, where in the interrogatory answer Porter admits to contacting the infirmary and learning of plaintiff's medical restrictions, while his declaration denies knowledge of a medical order to that effect (Docket No. 81, Pl. Rule 7.1(e) statement ¶¶ 8, 9-10 (comparing Answer to Interrogatory 13 with Declaration ¶ 42)). Plaintiff did not include the interrogatory answer with his response but the docket does contain that pro se discovery (Docket No. 69, Porter Ans. to Interrog.; cf. Docket No. 31, Pl. Interrogs. to Non-Party Porter).

## DISCUSSION

I.   Summary Judgment Standard

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(c). The party

seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Ford, supra, 316 F.3d at 354.  "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997).  While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

     The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56.1(a), (b).  The movant is to submit facts in which there is no genuine issue, id. R. 56.1(a), while the opponent submits a statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56.1(b).  "Each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, as required by Federal Rule of Civil Procedure 56(e)," with citations identifying "with specificity" the relevant page or paragraph of

the cited authority, id. R. 56.1(d).  All material facts stated in movant's statement that are not controverted by opponent's counter-statement shall be deemed admitted, id. R. 56.1(c).  The purpose of these statements and the appendix of supporting evidence, id. R. 56.1(d), is to summarize and highlight for the Court the material factual issues, the authority in the evidentiary record for the purported facts, and whether the parties believe they are in dispute.  Further, parties proceeding pro se must be familiar with, follow, and comply with this Court's Local Rules, with failure to comply with these rules possibly resulting in dismissal of the case with prejudice, id. R. 5.2(e).

In this case, plaintiff opposes this motion by submitting what he terms as a Rule 7.1(e) statement (Docket No. 81).  Pertinent to this motion, this Court's Local Civil Rule 7.1(e) requires for a motion for summary judgment under Federal Rule of Civil Procedure 56 the opponent to file and serve an answering memorandum of law and supporting affidavit, W.D.N.Y. Loc. Civ. R. 7.1(e).  This Court's Local Civil Rule 56.1 additionally requires the opponent to submit a separate statement of the material facts, distinct from the opponent's affidavit, with citations to the evidentiary record, id. R. 56.1(b), (d).  Plaintiff's Rule 7.1(e) statement (Docket No. 81) does cite to the evidentiary record, but it mainly cites to the Complaint and attached documents thereto.  This is pertinent because plaintiff's version of a key document, the medical order he claims restricts his movement and location, differs significantly from defendant's version in his moving papers (Compare Docket No. 1, Compl. Ex. D with Docket No. 72, Desourdy Decl. Ex. A).  Plaintiff argues in that Rule 7.1(e) statement that Monica Desourdy's declaration is "self-serving and cannot be relied upon" (Docket No. 81, Pl. R. 7.1(e) Statement ¶ 6), but there is no evidentiary support for plaintiff's statement.

Despite plaintiff's pro se status, he has to comply with this Court's rules, including submission of a opposing statement of material facts upon the penalty of having defendant's facts conceded absent such an opposing statement. As a result of the absence of plaintiff's contrary Rule 56.1(b) statement, the facts alleged in defendant's statement (including the defendant's version of the medical order without noting restrictions plaintiff claims were on that order) are deemed **admitted**.

II.     Deliberate Indifference

Plaintiff asserting a deliberate indifference claim under the Eighth Amendment has the burden of proving that defendants acted with deliberate indifference to his serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Estelle v. Gamble, 429 U.S. 97, 104 (1976). The Eighth Amendment prohibits infliction of "cruel and unusual punishments" which includes punishments that "involve the unnecessary and wanton infliction of pain." Gregg v. Georgia, 428 U.S. 153, 173 (1976) (citations omitted); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied, 513 U.S. 1154 (1995). Mere negligent treatment or malpractice upon a prisoner, however, does not create an Eighth Amendment violation. Corby v. Conboy, 457 F.2d 251, 254 (2d Cir. 1972) (see Docket No. 77, Def. Memo. at 4). Plaintiff, to establish a prima facie case, needs to show that defendant caused him sufficiently serious deprivation, Todaro v. Ward, 565 F.2d 48, 52 (2d Cir. 1977), and that defendant did so unnecessarily and wantonly, Farmer v. Brennan, 511 U.S. 825 (1994). "Sufficiently serious" deprivation is one that produces "death, degeneration, or extreme pain," Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998) (internal quotation omitted) (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)); see Wilson, supra, 501 U.S. at 298 (Docket No. 77, Def. Memo. at 5).

Defendant compares the so-called medical unit order plaintiff attached to his Complaint with the similar form found in his medical records (compare Docket No. 73, Def. Atty. Decl. Ex. B with Docket No. 72, DeSourdy Decl. Ex. A) and argues that the former is an alteration of the latter (Docket No. 77, Def. Memo. at 8-12). Defendant contends that plaintiff should be sanctioned under Rule 11 for submitting an altered document or that he fails to present (unaltered) evidence to substantiate his claims (id. at 11, 11-12). That same medical order assigned plaintiff to the "flats," which plaintiff misconstrues as being limited to only the ground floor (id. at 5-8).

Plaintiff counters that the version of the order defendant produced cannot be relied upon and rests upon the version he filed with the Complaint (Docket No. 81, Pl. Rule 7.1(3) statement ¶ 6). He also points to correction counselor and acting law library administrator Robert Thorn's memorandum of March 21, 2002, that "prison officials" acknowledged plaintiff's medical restrictions (Docket No. 82, Pl. Memo. at 9; Docket No. 1, Compl. Ex. E). Notably, defendant Porter was not copied on that memorandum (cf. Docket No. 1, Compl. Ex. E).

Plaintiff argues that Porter was aware that he was placing plaintiff in serious danger when he had plaintiff climb stairs and move his property on March 22 and 28, 2002 (Docket No. 82, Pl. Memo. at 12-13). Citing an earlier appeal in another case, plaintiff argues that summary judgment should be denied here because, like Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987) (prison guard denied summary judgment where inmate alleged guard forced him to use ladder that inmate had informed guard was unsafe), Porter saw plaintiff arrive on G-block with a cane, neck brace and wrist braces and with assistance to move his belongings and knew that he was not capable of moving his property up and down stairs (Docket No. 82, Pl. Memo. at 12-13).

11

Plaintiff contends that defendant's declaration in support of this motion contradicts his interrogatory answer regarding his knowledge of the medical order at issue here.  In answer to the interrogatory 13, which asked "Defendant, on March 22, 2002, did you check with the facility's medical department to determine whether plaintiff must be housed on the 'flats' for medical reasons," defendant answered:

> "**RESPONSE:** Yes. I called the infirmary and was informed that inmate Gill's order to lock on the flats had expired and that inmate Gill had no further reason to lock on the flats.  I also contacted inmate movement and control, who informed me that inmate Gill was eligible to lock on 4 gallery in G-block."

(Docket No. 69, Def. Response to Pl. Interrog. to Interrog. 13).  In his declaration (Docket No. 75, ¶ 42), defendant states "on March 22, 2002, I had no knowledge of any medical order requiring Gill to lock on the ground floor."  These two responses, however, are consistent.  In both, defendant claims that he did not have a current order that required plaintiff to be housed on the lowest floor, with whatever order plaintiff had having expired.

There are issues of fact as to what order plaintiff had and what was shown to defendant Porter, and whether Porter was aware of the law library administrator's memorandum acknowledging plaintiff's medical restrictions.  But for Rule 56 purposes these issues must be material in order to deny movant summary judgment.

Either version of Dr. Yin's medical order notes that plaintiff is to be locked on the flats (Docket No. 72, Desourdy Decl. Ex. A; Docket No. 1, Compl. Ex. D), with only the notation of "ASAP" (id.).  Either version of that order did not specifically note that plaintiff was to remain on the ground floor of the flats (or galleries number 1 or 2, Docket No. 74, Peters Decl. ¶¶12, 14).  Plaintiff has not produce contrary evidence to defendant's definition of "flats" being on the

two lowest floors (or constituting four galleries), rather than solely the ground floor (or the two lowest galleries) or showed how his version of the medical order restricted him to the ground floor of the flats.

Defendant also argues that his duties as Hall Captain did not authorize him to change plaintiff's cell assignment and precluded him from manually assisting plaintiff in moving plaintiff's possessions. Even if plaintiff's version of the medical order is true and defendant somehow was aware of the law library administrator's memorandum on plaintiff's condition and circumstances, defendant lacked the authority or the ability to assist plaintiff by avoiding the cell transfer or leaving defendant's post or have unavailable "packup inmates" help plaintiff move (Docket No. 75, Def. Decl. ¶¶ 39-40). Cell assignments (including factoring in medical reasons for particular assignments) were entrusted to the movement and control unit in the facility.

Therefore, plaintiff **fails** to establish his deliberate indifference claims or establish the existence of material issues of fact to preclude summary judgment.

III.     Rehabilitation Act

Next, plaintiff alleges in his Complaint that defendant violated § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a). Defendant contends that, sued in his individual capacity, he is not liable under the Rehabilitation Act (Docket No. 77, Def. Memo. at 3-4), see Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) (neither Rehabilitation Act nor Americans with Disabilities Act, 42 U.S.C. § 12132, provide for individual capacity suits against state officials); see also Parkinson v. Goord, 116 F. Supp. 2d 390, 399 (W.D.N.Y. 2000) (Larimer, Ch. J.) (same for claims under Americans with Disabilities Act).

Plaintiff, assuming that now he asserts a claim under the Americans with Disabilities Act, cites his own earlier appeal in another case in which he argued for liability under that Act (Docket No. 82, Pl. Memo. at 5, citing Gill v. Calescibetta, No. 03-274-pr, 157 Fed. Appx. 395, 396 n.2, 2005 U.S. App. LEXIS 26821, at *3 n.2 (2d Cir. December 7, 2005)).  The Second Circuit in Calescibetta held that, while state correctional facilities fall within the Americans with Disabilities Act, the Act "does not protect individuals from the actions of state officials undertaken in their individual capacities," id., 157 Fed. Appx. at 396 n.2, 2005 U.S. App. LEXIS 26821, at *3 n.2, dismissing plaintiff's claims under that Act.  He misreads that case as holding that defendants in their individual capacity may be liable under the Americans with Disabilities Act, id. (citing Garcia, supra, 280 F.3d at 107).  Plaintiff does not argue how defendant is liable under the Rehabilitation Act, which he alleged in the Complaint.

Under Garcia, neither the Rehabilitation Act nor the Americans with Disabilities Act recognize claims against individual officials in their individual[2] capacity.  Insofar as plaintiff is suing defendant Porter in his individual capacity under the Rehabilitation Act, defendant is not liable and that claim is **dismissed**.

IV.	Qualified Immunity

Alternatively, defendant Porter argues that he should enjoy qualified immunity (Docket No. 77, Def. Memo. at 13-14).  When confronted by a claim of qualified immunity, one of the first questions for the Court to resolve is do the facts, taken in the light most favorable to the party asserting the injury, show the official's conduct violated a constitutional right.  See Saucier

---

[2]This is the correction from the prior Order, which read that the acts cited did not recognize claims against individual officers in their "official capacity," Docket No. 84, Order at 14.

v. Katz, 533 U.S. 194, 201 (2001).  As required by the Saucier Court, this Court first considered (above) the constitutional question, then considered the qualified immunity question, id.  The discussion above indicates whether a constitutional violation occurred and no such violation has been found here.  But, even if plaintiff somehow established material issues of fact as to liability on his constitutional claims, defendant Porter is entitled to qualified immunity.

Government officials performing discretionary functions generally are shielded by qualified immunity from liability in their individual capacities, see Frank v. Reilin, 1 F.3d 1317, 1327 (2d Cir. 1993), "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "If it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity."  Anderson v. Creighton, 483 U.S. 635, 641 (1987); Lowth v. Town of Cheektowaga, 82 F.3d 563, 568-69 (2d Cir. 1996).

Here, it was objectively reasonable for defendant to believe that he did not violate plaintiff's rights.  His duties precluded him from adjusting plaintiff's cell assignment or assisting him in moving his property, despite (accepting plaintiff's version of the order and its medical restrictions) the medical order to the contrary.  As for plaintiff's contention that he be ordered to the ground floor, the medical order at issue referred only to the flats, defined by the facility (without contradiction by plaintiff) as including the ground or first floors.  Given that defendant Porter lacked the authority to assign cells, his reading of the order to the "flats" as including the first floor galleries was objectively reasonable.  Therefore, Porter should enjoy qualified immunity.

**CONCLUSION**

For the reasons stated above, defendant Matthew Porter's motion for summary judgment (Docket No. 71) is **granted** as corrected from the prior Order (Docket No. 83). This Order replaces the Order of January 17, 2007 (Docket No. 83). The Judgment entered in defendant's favor (Docket No. 84) stands.

So Ordered.

                                                  */s/ Hugh B. Scott*
                                                  Honorable Hugh B. Scott
                                                  United States Magistrate Judge

Dated: Buffalo, New York
        February 26, 2007